UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| DERRELL DUNMILES | § | C.A. No.  2:16-cv-14325-LMA-KWR | |
| | § | | |
| VS. | § | SEC. "I" | MAG. (4) |
| | § | | |
| JUBILEE TOWING, LLC | § | | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION IN *LIMINE* TO EXCLUDE EXPERT PIERCE**

NOW INTO COURT, through undersigned counsel, comes Plaintiff Derrell Dunmiles and responds to the Motion in *Limine* to Exclude Plaintiff's Safety Expert Testimony of John Pierce filed by Defendant Jubilee Towing, LLC (Rec. Doc. 25), respectfully showing:

### I.  Factual Background

Plaintiff has brought suit for injuries sustained while employed as a deckhand by Defendant on its 60-foot, twin-screw towboat, *El Sol de Caribe,* which it owns and operates. While Plaintiff was working aboard the vessel on November 21, 2015, her captain failed to properly navigate in a safe and seamanlike manner, striking a sandbar in the Mississippi River, causing Plaintiff to fall overboard and sustain serious and debilitating injuries to his leg, neck and back.  (Rec. Doc. 1).

Dunmiles retained safety expert John C. Pierce who issued a January 13, 2017, report in which he found that on the occasion described above, Capt. Roland Prestenbach operated the *El Sol de Caribe* in an unsafe manner and failed to use his local knowledge of the operating area and thus ran the vessel hard aground. *See* Ex. 1 to Defendant's Motion.[1]  Pierce concluded *inter alia* that the vessel's skipper, Captain Prestenbach, failed to follow safe practice and customary

---

[1] Attached as Ex. 1 to Defendant's Motion is Pierce's preliminary report of January 13, 2017 (Rec. Doc. 25-2). Plaintiff hereby incorporates same by reference into this opposition.

procedure when he failed to warn crew members of the presence of possible sandbars in the area and did not properly inquire and determine that all of his crew members were safe after the grounding. *Id.* Citing Pierce's report, however, Defendant requests this Court flatly exclude Pierce's expert testimony on grounds his testimony will not help the jury and thus will not satisfy Federal Rule of Evidence 702.

## II. Argument and Authorities

Defendant's Motion should be denied and Pierce be allowed to testify at trial as Plaintiff's expert witness for these reasons:

### A. Admission of expert testimony is addressed to this Court's sound discretion and a motion in *limine* is an ill-suited vehicle for this purpose

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998); *Arnaud v. Island Operating Co.*, 2010 WL 936452, at *2 (E.D. La. Mar. 11, 2010); Fed. R. Evid. 702. "[U]nder *Daubert* and Federal Rule of Evidence 702, a district court has **broad discretion** to determine whether a body of evidence relied on by an expert is sufficient to support that expert's opinion. . ." *Macy v. Whirlpool Corp.*, 613 F.App'x 340, 344 (5th Cir. 2015)(emphasis added).

Motions in *limine* should not be used to resolve factual disputes or to weigh evidence, and evidence should not be excluded prior to trial unless the evidence is inadmissible on all potential grounds. *See, e.g., Indiana Ins. Co. v. General Elec. Co.,* 326 F.Supp.2d 844, 846 (N.D. Ohio 2004). Rulings on limine motions "are not binding on the trial judge, and they may be changed in response to developments at trial." *United States v. Whittemore*, 944 F.Supp.2d 1003, 1006 (D. Nev. 2013), *aff'd*, 776 F.3d 1074 (9th Cir. 2015). Courts have noted this when allowing an expert witness to

testify: *see, e.g.*, *Marin v. Falgout Offshore,* 2011 WL 6000848, at *3 (E.D. La. Nov. 30, 2011) ("***After hearing their testimony and cross-examination***, the Court will be in a position to give those opinions whatever evidentiary weight they warrant.")(emphasis added). Defendant's Motion should be denied purely on procedural grounds.

> **B. Pierce does more than restate the obvious. His 26 years of experience in the marine industry bring context to the facts, and given that jurors are less-than-familiar with vessel handling and navigation on the Mississippi River, his years of experience and insights into navigation and vessel handling will thus assist the jury**

Defendant argues that there is "nothing technical or complex to plaintiff's alleged accident" and that "nothing to which Pierce could testify would make the alleged incident any more comprehensible to the average juror, and the jury will be able to easily draw conclusions from the fact witness testimony that will be offered." Rec. Doc. 25-1 at 4. This is emphatically untrue. This case arises out of the navigation of a towboat on the navigable waters of the Mississippi River, and questions of "whether the vessel struck a sandbar due to unsafe maneuvering [and], whether plaintiff should have been in the galley and not next to the bulwarks while underway" (*id.*) are hardly with within the common knowledge of an average juror. As shown in Defendant' Ex. 1, which includes his CV, Pierce has 26 years of experience in maritime navigation, bridge safety, navigation training, towing, and vessel inspection/auditing for navigation. Ex. 1 at 13 (Rec. Doc. 25-2, p 15 of 17). A graduate of the United States Coast Guard Academy, Pierce's Coast Guard career included tours aboard several Coast Guard cutters, and as further noted therein,

> Mr. Pierce is an experienced ship handler who has on many occasions safely navigated in demanding conditions including heavy weather, low visibility, high current and high traffic areas. Having moored in multiple U.S. and foreign ports and having transited the Mississippi River and Panama Canal, he fully understands the complex roles of Pilots and the ship's crew to maintain ship safety during transits.

*Id.*

Moreover, Defendant improperly assumes that the relatively straightforward slip-and-fall cases like it cites at page 4, footnote 10[2] of its memo are of the same complexity as are the navigational and marine safety principles that are presented here.  It also implies that slips-and-falls and vessel operations somehow both enjoy the average juror's familiarity. These are incorrect assumptions. Ship handling and navigation are far more complicated concepts than slipping on a muddy deck.  The fact that most commercial vessels must, by law, be operated by licensed personnel telegraphs the message that training and specialized knowledge are involved in ship handling. Courts accordingly recognize vessel handling as a speciality where expert testimony is not only helpful, but sometimes essential.  For example, in *Peters v. Five Star Marine Service,* 898 F.2d 448, 450 (5th Cir.1990), the appeals court noted

> [I]n a recent unpublished opinion, ***we reversed the district court for disallowing expert testimony on similar facts***. *Smith v. United Gas Pipeline Co.*, 857 F.2d 1471 (5th Cir.1988). In that case the trial judge refused to allow the ***plaintiff's maritime operations expert*** to testify as to the reasonableness of a ship-to-ship transfer of machinery during rough seas. The plaintiff had been injured during the transfer. We reversed the exclusion of the testimony.. . . [because in *Smith*] the jury was asked to gauge the reasonableness of using a ship's crane equipped with a "headache ball" and a shackle without a "tag line" while the two ships were stern-to-stern in heavy seas, taking into account the backwash caused by the propellers of both vessels. ***The trial judge abused his discretion in deciding that an analysis of the confluence of these factors was within the realm of the average juror's knowledge and experience***.

898 F.2d at 450 (emphasis added), *citing Smith v. United Gas Pipe Line Co.*, 857 F.2d 1471 (5th Cir.1988) (unpublished table opin.).  A similar result was reached *in Grissom v. Seal Fleet. Inc.*,1997 WL 644090 (E.D. La. 1997), in which the court noted, "It defies credulity to assume ... that with regard to a 185-foot vessel moored to an offshore drilling rig ***whether the Captain was or should have been maneuvering the boat***, whether there was ***too much slack in the mooring line*** and

---

[2]  *See, e.g.*, *Peters v. Five Star Marine Service*, 89 F.2d 448 (5th Cir. 1990).

4

whether the bitter end of the line should have been hanging in the water are issues within the purview of the jury's lay understanding." (emphasis added). Likewise, the court in *Sorcic v. Sea Horse Marine, Inc.*, 1998 WL 175897, at *2 (E.D. La. Apr. 13, 1998), a vessel transfer case, noted, "These subjects are not within the realm of knowledge and experience of an average jury and thus the Court finds that the testimony of plaintiff's experts analyzing ***the confluence of factors involved in a platform to vessel transfer*** would assist the trier of fact in understanding this matter." (emphasis added). Finally, in *Mike Hooks Dredging Co. v. Marquette Transp. Gulf-Inland, L.L.C.*, 716 F.3d 886, 894 (5th Cir. 2013), a vessel collision case, the appeals court held that district court did not abuse its discretion in admitting an expert witness in vessel navigation who –while he may have lacked "practical experience" with the Gulf Intracoastal Waterway– nevertheless had "extensive experience with maritime navigation" in other countries. *See additionally Bethlehem Steel Corp. v. Yates*, 438 F.2d 798, 801–02 (5th Cir. 1971), in which the Fifth Circuit accepted the finding of the district court that "Captain William T. Corfield, a seaman of about 22 years seagoing experience, holder of an unlimited master's license, who later served as a Coast Guard officer . . . rendered an ***expert opinion that the proximate cause of the SS BETHFLOR's collision*** with the Florida Portland Cement dock . . . was [the pilot's] failure to initially properly position the SS BETHFLOR off the dock ... ." 438 F.2d at 801–02 (emphasis added).

     As can be seen, vessel handling and navigational safety are complex issues that merit expert opinion. As such, Pierce's testimony will unquestionably assist the jury to understand the context of this case.

### C. Pierce's testimony is reliable

Defendant next complains that Pierce's testimony "satisfies none of [the *Daubert*] factors" and that his "entire report and conclusions are based solely upon plaintiff's discovery answers, the Coast Guard 2692 marine accident form, and Jubilee Towing's Company Safety Rules & Policy." Rec. Doc. 25-1 at 6. In short, Defendant faults Pierce for allegedly not personally interviewing the Plaintiff or some of the crew members. *Id.*

Although it offers the usual Rule 702 and *Daubert* discussion (D.E. 25-1 at 5–6), Defendant's challenge to Pierce does not truly touch the **heart** of *Daubert*. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Court held that expert testimony may be admitted only if the expert is qualified to testify competently regarding the matters he intends to address; the methodology by which he reaches his conclusions is sufficiently reliable; and the testimony, through the application of scientific, technical, or specialized expertise, assists the trier of fact in understanding the evidence or determining a fact in issue. *Id.* As the *Daubert* Court made clear, "a key question to be answered in determining whether a theory or technique is **scientific knowledge** that will assist the trier of fact will be whether it can be (and has been) tested. 'Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry.'" 509 U.S. at 593 (citation omitted; emphasis added). "Its **overarching subject is the scientific validity** and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Id.* at 594–95 (emphasis added). Defendant does **not** challenge Pierce's credentials or his use of science.

To the degree Defendant maligns Pierce's methodology for allegedly not interviewing the plaintiff or crew (or, for that matter, not considering anything in particular), such criticism must be addressed through cross-examination, not outright exclusion. *See Daubert*, 509 U.S. at 596 (vigorous cross-examination and presentation of contrary evidence are the traditional and appropriate means of questioning expert evidence). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration. *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir.1987)." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996). As noted by the District Court in *General Electric Capital Business Asset Funding Corp. v. S.A.S.E. Military Ltd.*, 2004 WL 5495590, at *5 (W.D. Tex. Oct. 21, 2004),

> Courts should not be lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility. Therefore, challenges to the factual bases or underpinnings of an expert opinion usually go only to weight and credibility of the evidence, not admissibility. Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder. Exclusion is not required even when the expert's opinion is tentative or speculative. Using these principles, courts have found no basis for exclusion when experts were challenged for failing to take into account certain data.

*General Elec.*, 2004 WL 5495590, at *5 (all internal citations omitted). In short, Defendant's complaint against Pierce does not warrant his outright exclusion.

### III. Conclusion

By wedging a tangential *Daubert* challenge into a motion in *limine*, Defendant seeks to exclude the testimony of Plaintiff's safety and navigation expert, John Pierce. Admission of expert testimony is addressed to this Court's sound discretion, however, and a motion in *limine* is ill-suited for this purpose. As reflected in his report and CV, Pierce's 26 years of maritime industry experience

and years of vessel handling give him valuable insight into both the navigation and safe operation of vessels, and courts routinely recognize that these topics are indeed sophisticated areas worthy of expert information. Criticism of Pierce's sources can be made through cross examination.

WHEREFORE, Plaintiff prays Defendant's Motion be denied, and for all other relief to which he may be justly entitled.

    Respectfully submitted,

    */s/ Mary Holmesly*
    Mary Holmesly (PHV)
    TX State Bar No. 24057907
    mholmesly@spaglaw.com
    SPAGNOLETTI & CO.
    401 Louisiana Street, 8th Floor
    Houston, Texas 77002
    Telephone:   713-653-5600
    Facsimile:   713-653-5656

**OF COUNSEL:**

Walter Naquin, Jr. (#09891)
P. O. Box 127
Thibodaux, LA 70302
Telephone:   985.447.9554
butchnaquin@bellsouth.net

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing was on this 17th day of March, 2017, automatically accomplished on all counsel of record through CM/ECF Notice of Electronic Filing, in accordance with the Federal Rules of Civil Procedure.

    */s/ Mary Holmesly*
    Mary Holmesly