UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DERRELL DUNMILES**                                          **CIVIL ACTION**

**VERSUS**                                                  **No. 16-14325**

**JUBILEE TOWING, LLC**                             **SECTION I**

### ORDER AND REASONS

Before the Court are three motions[1] in limine filed by the defendant. The Court rules on the motions as set forth herein.

### I.

Defendant, Jubilee Towing, LLC, first moves[2] to exclude any evidence of and/or reference to alleged racially discriminatory text messages sent to the plaintiff by Jubilee employees. The plaintiff mentioned during his deposition that he was sent racist text messages by a Jubilee employee towards the end of his employment, but plaintiff claimed that he deleted the messages and that he could not specifically recall what the alleged racist messages said.

Jubilee argues that there is no evidence that racist messages were ever sent to plaintiff. But even if they were, Jubilee contends that such messages would bear no relevance to this maritime slip-and-fall-overboard case and further that they would be unduly prejudicial. Jubilee asks the Court to exclude the messages and any reference to them pursuant to Rules 402 and 403 of the Federal Rules of Evidence.

---

[1] R. Doc. Nos. 23, 24, 25.
[2] R. Doc. No. 23.

In response, plaintiff simply states that "[a]t this point in time, Plaintiff's counsel does not anticipate making reference to 'racially discriminatory text messages sent to plaintiff by Jubilee Towing employees' in front of the jury," but he argues that the Court should defer a ruling as to the admissibility of such messages in case an issue arises during trial which would make the messages relevant. *See* R. Doc. No. 28.  The Court notes that plaintiff does not explain why the messages are relevant or identify any scenarios wherein the alleged messages could become relevant.

In order to be relevant, evidence must pertain to a fact that "is of consequence in determining the action." *See* Fed. R. Evid. 401.  Having been presented with no evidence establishing the substance of the text messages and no argument by the plaintiff as to why such messages could be relevant, the Court finds plaintiff's testimony as to the text messages to be irrelevant and it excludes them pursuant to Rule 402.  Simply put, the Court is unaware of any reason why racist text messages—even if they exist—would have any bearing on the facts of this case.  After all, establishing that an employee of the defendant sent the plaintiff racist text messages at some point after the accident would put the plaintiff no closer to recovering on his claim that the captain of defendant's vessel failed to navigate the vessel in a safe and seamanlike manner.

Moreover, it appears that any probative value that the messages have is substantially outweighed by the danger of unfair prejudice, confusing the jury, and wasting time.  The messages should therefore be excluded under Rule 403 as well as

pursuant to Rule 402. Counsel shall instruct their witnesses that the text messages are not to be mentioned at trial.

## II.

Jubilee's second and third motions challenge the admissibility of opinions by two of plaintiff's experts. After setting forth the appropriate standard, the Court addresses each *Daubert* challenge below.

### A.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (internal quotation marks and citation omitted). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524. "A district court should refuse to allow an expert

witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (internal quotation marks and citation omitted). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). "Both the determination of reliability itself and

4

the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevance of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

B.

Jubilee moves[3] to exclude certain opinions by plaintiff's expert economist, G. Randolph Rice, pursuant to Rule 702 and *Daubert*. Jubilee takes issue with Rice's opinion regarding plaintiff's future lost earnings. It argues that when making his calculations, Rice simply assumed that plaintiff would only be able to earn a minimum wage in the future without pointing to any reason why plaintiff will only be able to earn a minimum wage. No other expert in this case has offered the opinion,

---

[3] R. Doc. No. 24.

5

so far as the Court is aware, that plaintiff can only earn a minimum wage due to the accident. Rice's report states that he reviewed only plaintiff's employment intake form, plaintiff's 2015 pay stubs, and the original complaint in forming his opinions. *See* R. Doc. No. 24-2, at 1.

It is unclear how any of the information reviewed by Rice and set forth in his expert report provides a basis for his conclusion that in the future, plaintiff will only be able to earn a minimum wage. Pay stubs dating from before the accident and an employment intake form would not reveal the amount that plaintiff is capable of earning in the future. According to Jubilee, Rice's assumption about the minimum wage is based on nothing more than unsupported speculation and it must be excluded as unreliable.

In what the Court considers to be a particularly substandard and non-responsive brief, plaintiff's counsel responds that Jubilee's criticism is invalid because "an economist's testimony is *inevitably* grounded in educated speculation about the economy." *See* R. Doc. No. 29, at 4 (emphasis in original). Plaintiff's counsel argues that economists routinely deal in statistical averages, which inherently are somewhat speculative, but that their opinions are nonetheless admitted. On that basis, plaintiff's counsel urges the Court to deny the motion.

Plaintiff's counsel's arguments are so unresponsive to Jubilee's challenges that the Court is left wondering whether plaintiff's counsel attempted to obfuscate the issue in order to hide the fact that absolutely no evidence has been provided to the Court that the plaintiff can only earn a minimum wage. Indeed, contrary to plaintiff's

counsel's contentions, Jubilee is not complaining that it was improper for Rice to rely on the national statistical averages when calculating the plaintiff's work-life expectancy, or more generally that an economist cannot rely on statistical averages when computing damages. It is of course permissible for expert economists to do so. *See Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 478 (5th Cir. 1984) (calculations of future wage loss should be based on statistical averages unless the plaintiff offers evidence supporting a deviation). Rather, Jubilee is arguing that it is improper for an expert economist to determine—based on no supporting evidence—the income that the plaintiff is capable of earning as a result of the accident, and then to calculate future lost wages based on that number.

In this Court's experience, when calculating future lost wages, economists typically rely on other experts—such as vocational rehabilitation experts—to advise them as to the income a plaintiff can probably earn due to his injuries. Economists then use that information in conjunction with actuarial data to estimate the wage loss the plaintiff will probably sustain over the course of his lifetime. Rice's expert report does not mention the basis for his assumption that plaintiff can only earn a minimum wage, *see* R. Doc. No. 24-2, and plaintiff's brief does not identify any evidence whatsoever which would support such an assumption.

Without any evidence to support the assumption that plaintiff is only capable of earning a minimum wage, Rice's calculation of plaintiff's future earning capacity based on that assumption is unreliable, irrelevant, and potentially confusing for the jury. *See Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 516 (5th Cir. 2013) ("[E]xpert

7

testimony that relies on completely unsubstantiated factual assertions is inadmissible.") (internal quotation marks and citation omitted)). Jubilee's motion to exclude Rice's future wage loss calculation based on plaintiff earning a minimum wage is granted and counsel are instructed not to mention such opinion at trial.

However, out of an abundance of caution and in an attempt to ensure that the plaintiff is not unduly harmed by his counsel's mistakes, the Court is willing to reconsider the issue should admissible evidence be introduced at trial suggesting that plaintiff is limited to earning a minimum wage as a result of the accident. If that is the case, plaintiff's counsel may approach the bench and request permission to elicit expert testimony from Rice based on such evidence.

## C.

Jubilee next moves[4] to exclude all opinions by the plaintiff's maritime safety expert, John Pierce, pursuant to Rule 702 and *Daubert*. Jubilee argues that no expert testimony is permissible on the subject of maritime safety in this case, as the facts are simple and easily within the knowledge of the typical juror. Even if expert testimony was permissible on this subject, Jubilee asserts that Pierce's opinions are too unreliable to be admitted because Pierce only reviewed plaintiff's discovery answers, the Coast Guard accident form, and Jubilee's safety policies in formulating his opinion. Pierce apparently did not review the plaintiff's deposition testimony or the crewmembers' deposition testimony, and he did not inspect the vessel itself or review any photographs of the vessel before issuing his expert report. In essence,

---

[4] R. Doc. No. 25.

Jubilee argues that the plaintiff is trying to use Pierce to offer an unreliable lay witness opinion which the jury will unduly credit because it comes from the mouth of an expert.

Plaintiff responds that Jubilee's criticisms go to the weight that should be given to Pierce's testimony and not its admissibility. Plaintiff also cites a string of maritime cases in which expert testimony was permitted by the court, and he argues that this case is more complicated than Jubilee suggests. *See* R. Doc. No. 30, at 4-5.

Having reviewed Pierce's expert report and the cases cited by the parties, the Court is not convinced that Pierce's testimony is too unreliable to be admitted under Rule 702. Indeed, the detailed analysis contained in Pierce's expert report, *see* R. Doc. No. 25-2, suggests that the inquiry is more nuanced than Jubilee admits. At the very least, there is sufficient room for disagreement to permit Pierce's testimony to be presented to the jury. Jubilee's concerns can be addressed through the traditional method—cross examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Jubilee's motion to exclude Pierce's testimony is denied.

## III.

For the foregoing reasons,

**IT IS ORDERED** that Jubilee's first two motions[5], as resolved herein, are **GRANTED** and its third motion[6] is **DENIED** as set forth herein.

New Orleans, Louisiana, April 3, 2017.

_____
             **LANCE M. AFRICK**
      **UNITED STATES DISTRICT JUDGE**

---

[5] R. Doc. Nos. 23, 24.
[6] R. Doc. No. 25.